IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IVAN RUIZ-RIVERA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-2105 |
| | : | |
| v. | : | |
| | : | |
| CITY AND COUNTY OF LANCASTER; | : | |
| POLICE OFFICER JACOB BINGHAM | : | |
| #316; POLICE OFFICER LAPP (Badge | : | |
| Number Unknown); FICTITIOUS | : | |
| DESIGNATION – JOHN DOES (#1-25); | : | |
| and FICTITIOUS DESIGNATION – ABC | : | |
| CORPORATIONS (#1-25), | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                          September 9, 2021

The plaintiff has filed this action claiming that city police officers violated his constitutional rights and committed state-law torts when one officer followed him onto his property, eventually tased him in the back, and then that officer and other officers tackled the plaintiff and repeatedly punched him. The defendants, which include the officers involved in the incident, the city which employed the officers, and the county, have filed the instant motion to dismiss some of the plaintiff's claims in the operative complaint. More specifically, they have requested that the court dismiss the plaintiff's (1) claims for due process violations, (2) claims for violations of the Pennsylvania Constitution, (3) claim for an unconstitutional conspiracy under the Civil Rights Act, (4) state-law tort claims because they are barred by Pennsylvania's Political Subdivision Tort Claims Act, (5) references to declaratory or injunctive relief because the plaintiff lacks standing to seek these forms of relief, and (6) references to the First Amendment, Fifth Amendment, and equal protection.

As discussed below, the court will grant in part and deny in part the defendants' motion to partially dismiss. The court will dismiss the plaintiff's Fourteenth Amendment due process claim because his claim is covered more specifically by the Fourth Amendment. The court will also dismiss the plaintiff's due process claim (or any other possible claim) under the Pennsylvania Constitution, to the extent he is seeking money damages, because he may not assert such a cause of action. As for the plaintiff's conspiracy claims, he has failed to include sufficient allegations for the court to reasonably infer that the defendants conspired to violate his constitutional rights, so the court will also dismiss this claim. Regarding the plaintiff's state-law tort claims, which include three intentional torts and a negligent infliction of emotional distress claim, the Political Subdivision Tort Claims Act bars these claims against the city. And, while this Act would bar the negligent infliction of emotional distress claim against the individual officers, it does not bar the intentional tort claims asserted against them.

Concerning the plaintiff's claims for injunctive and declaratory relief, at this early stage the court cannot say that the plaintiff lacks standing to seek these forms of relief against the defendants. Finally, despite issues with the plaintiff's operative pleading which the court describes below, he has seemingly pleaded a viable claim under the First Amendment. However, he has failed to plausibly plead a claim under the Fifth Amendment or the Equal Protection Clause, so the court must dismiss these claims.

## I.       ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff, Ivan Ruiz-Rivera ("Ruiz-Rivera"), commenced this action by filing a complaint against the defendants, City and County of Lancaster, Police Officer Jacob Bingham, Police Officer Lapp, and numerous fictitious individual and entity defendants on May 6, 2021. On May 10, 2021, Ruiz-Rivera filed an amended complaint against the same defendants.

In the amended complaint, Ruiz-Rivera alleges that he is a 50-year-old, male Hispanic-American, who lives in the city and county of Lancaster, Pennsylvania. Am. Compl. at ¶ 6, Doc. No. 2. Officers Bingham and Lapp are members of the City of Lancaster Police Department. *Id.* at ¶¶ 8, 9.

On or about December 6, 2019, at 5:04 a.m., Officer Bingham arrived at 33 Belmont Street in the City of Lancaster. *Id.* at ¶ 14. Officer Bingham claimed that he arrived at this location because he received a dispatch regarding an incident of domestic violence there involving Ruiz-Rivera.[1] *Id.* at ¶ 12. The domestic assault was allegedly taking place in or near a red SUV. *Id.* at ¶ 14.

Upon Officer Bingham's arrival at the scene, a red SUV was parked in front of the residence located at 33 Belmont Street. *Id.* Officer Bingham exited his police cruiser and approached the red SUV. *Id.* at ¶ 15. Ruiz-Rivera apparently noticed Officer Bingham's police cruiser and other police vehicles in front of the residence, so he approached Officer Bingham and instructed him to leave his property. *Id.* Officer Bingham responded by telling Ruiz-Rivera that he was on a public street and not on his property. *Id.* at ¶ 16.

Ruiz-Rivera continued to instruct Officer Bingham to leave his property and then walked away from him. *Id.* at ¶ 17. When Ruiz-Rivera began to walk away, Officer Bingham started to "aggressive[ly] follow" him onto his property, without his permission to do so. *Id.* As Officer Bingham followed Ruiz-Rivera, he asked, "Who is here with you?" *Id.* at ¶ 18. Ruiz-Rivera responded by stating, "None of your business, leave my house." *Id.* Officer Bingham did not leave and continued to trespass on Ruiz-Rivera's property and ask him "who is here with you?" *Id.* at ¶

---

[1] Ruiz-Rivera claims that "[t]he aforementioned call did not come from the residence in question, nor did it come from anyone who lived within the residence." Am. Compl. at ¶ 13. He appears to cast doubt as to whether Officer Bingham received any such dispatch or the contents of the dispatch. *See id.* at ¶ 12 (indicating that Officer Bingham "alleged" that he was dispatched to 33 Belmont Street based on report of domestic violence involving Ruiz-Rivera).

19. Ruiz-Rivera continuously asked Officer Bingham to leave the property, but Officer Bingham did not do so. *Id.* at ¶ 20.

Apparently, in response to one of Officer Bingham's questions about who was with Ruiz-Rivera, Ruiz-Rivera responded by saying, "your mother" and then walked away. *Id.* at ¶ 21. Officer Bingham then again "aggressively followed" Ruiz-Rivera until telling him to "stop walking away . . . you are gonna get tased." *Id.* at ¶ 22. After Ruiz-Rivera walked away anyway, Officer Bingham tased him in the back for several seconds, yelling "get on the ground."[2] *Id.*

Upon being tased, Ruiz-Rivera was screaming in pain and yelling to "leave me alone." *Id.* at ¶ 23. At this point, Officer Bingham, Officer Lapp, and other officers tackled Ruiz-Rivera and started to punch him, without provocation. *Id.* While being struck by the officers, Ruiz-Rivera asked them why they were hitting him and asked them whether he had hit them. *Id.* at ¶ 24.

The officers eventually handcuffed Ruiz-Rivera. *Id.* at ¶ 25. After being handcuffed, Ruiz-Rivera continuously asked the officers to leave his property and not allow his children to see what was happening. *Id.* He also asked if he could turn around on his back, but Officer Bingham said that he needed to "stay like that." *Id.* at ¶ 26.

Because of the conduct of the police officer defendants, Ruiz-Rivera "suffered severe injuries to his person, which left him bloody, bruised, battered and mentally affected." *Id.* at ¶ 28. He claims he suffered "mental shock, trauma and mental distress." *Id.* at ¶ 34.

Ruiz-Rivera claims that the police officers used excessive force and committed battery against him. *Id.* at ¶ 29. Based on information he has received, Ruiz-Rivera believes that these officers "have committed such brutal acts in the past against innocent victims." *Id.* at ¶ 30. He also

---

[2] The plaintiff avers that the entire encounter was recorded on Officer Bingham's body camera. Am. Compl. at ¶ 27. The plaintiff claims that despite this recording, Officer Bingham falsified the incident report by stating that Ruiz-Rivera had gotten into a fighting stance, even though he was actually walking away when he was tased in the back. *Id.*

believes that other complaints have been made against these officers and Internal Affairs has investigated the complaints. *Id.* at ¶ 31.

With regard to the City of Lancaster and the City of Lancaster Police Department, Ruiz-Rivera alleges that they have a

> well-known and documented custom, policy and practice of not taking reasonable steps to properly train its [sic] police officers to not violate the constitutionally protected rights of the citizens of the Commonwealth of Pennsylvania. More particularly the residence [sic] of Lancaster, Pennsylvania. This includes, but is not limited to, the unlawful tasing of citizens.

*Id.* at ¶ 35. He claims that "[e]ach year, hundreds of law-abiding citizens are victims of police brutality by . . . City of Lancaster employees (police officers) that result in their being charged and prosecuted for crimes they are innocent of." *Id.* at ¶ 36. He also avers that

> [p]olice brutality is rampant in Lancaster. The City of Lancaster and their police department has [sic] a Custom [sic] of condoning alleged instances of police brutality without punishing its [sic] officers. The Defendants has [sic] a history of exonerating officers for allegedly using excessive force against its [sic] citizens. Officers within the police department are secure in knowing that a reported incident will not result in any disciplinary proceeding unless another officer can verify that the force was excessive. The City of Lancaster has permitted and tolerated the practice of unjustified and unreasonable uses of excessive force by its officers under the color of state law.

*Id.* at ¶ 37.

Based on the aforementioned allegations, Ruiz-Rivera asserts a number of causes of action in the amended complaint. Those causes of action are:

Count I:   "Violation of 42 U.S.C. § 1983 and 1985 [–] *Monell* Claim While Acting Under the Color of State Law" against the City of Lancaster

Count II:   "Violation of Fourth Amendment Right of United States Constitution and Article 1 of the Pennsylvania Constitution Due Process Rights" against all defendants

Count III:   "Violation of Civil Rights While Acting Under the Color of Law for Failure to Interven [sic] Under 42 U.S.C. § 1983" against Officer Bingham, Officer Lapp, and John Doe Officers 1-25

| Count IV: | "Conspiracy to Violate Ruiz-Rivera's Constitutional Civil Rights and Other Rights in Violation of 42 U.S.C. § 1983" against Officer Bingham, Officer Lapp, and John Doe Officers 1-25 |
|---|---|
| Count V: | "Violation of Fourteenth Amendment Due Process Rights" against all defendants |
| Count VI: | Assault and Battery against Officer Bingham, Officer Lapp, and John Doe Officers 1-25 |
| Count VII: | Excessive Force against Officer Bingham, Officer Lapp, and John Doe Officers 1-25 |
| Count VIII: | Negligent Infliction of Emotional Distress against all defendants |
| Count IX: | State Law Claims of Assault, Battery, Trespass, and Negligent Infliction of Emotional Distress against all defendants |

*Id.* at 9–21 (most capitalization and emphasis omitted). For his requests for relief, Ruiz-Rivera seeks, *inter alia*, compensatory and punitive damages, attorney's fees, and costs and expenses.[3] *Id.* at 21–22.

The defendants have responded to the amended complaint by filing a motion to dismiss parts of the amended complaint on June 21, 2021. Doc. No. 5. The plaintiff filed a brief in opposition to the motion to partially dismiss on July 5, 2021. Doc. No. 6. The motion to partially dismiss is ripe for disposition.

## II.     DISCUSSION

### A.     Standard of Review – Motions to Dismiss Under Rule 12(b) of the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted.

---

[3] Ruiz-Rivera also generally references declaratory and injunctive relief in his introductory paragraph, *see* Am. Compl. at 2, and mentions that such relief is "authorized by" 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure. *Id.* at ¶ 3.

Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted).

"In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). The court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994) (citations omitted).

## B.     Analysis

In the motion to dismiss, the defendants assert that the court should dismiss certain portions of the amended complaint. More specifically, the defendants argue that the court should dismiss (1) any claims for due process violations, including any purported due process claims under the Pennsylvania Constitution, in Counts II and V of the amended complaint; (2) the cause of action for a conspiracy in Count IV of the amended complaint; (3) any state law tort claims for negligent infliction of emotional distress, trespass, or assault and battery asserted against the defendants in Counts VI, VIII, and IX of the amended complaint; (4) any claims for declaratory or injunctive relief; (5) any claims for violations of the First or Fifth Amendments; and (6) any claims for violations of the Equal Protection Clause. *See* Defs.' City of Lancaster, Police Officer Jacob Bingham and Police Officer Lapp's Partial Mot. to Dismiss Pl.'s Am. Compl. at 4–5, Doc. No. 5. The court addresses each argument in turn.

### 1.     Due Process Claims

In Counts II and V of the amended complaint, Ruiz-Rivera appears to assert causes of action for violations of his due process rights under both the United States and Pennsylvania Constitutions. *See* Am. Compl. at 13, 17. The defendants contend that the court should dismiss any due process claims because excessive force claims such as those Ruiz-Rivera is asserting here, are analyzed under the reasonableness standard of the Fourth Amendment instead of under a substantive due process standard under the Fourteenth Amendment. *See* Defs.' City of Lancaster, Police Officer Jacob Bingham and Police Officer Lapp's Mem. of Law in Supp. of Their Partial Mot. to Dismiss Pl.'s Am. Compl. ("Defs.' Br.") at 9–10, Doc. No. 5 (citing *Graham v. Connor*, 490 U.S. 386 (1989); *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260–61 (3d Cir. 2010)). The defendants also argue that to the extent that Ruiz-

Rivera is seeking a private right of recovery under the Pennsylvania Constitution, no such cause of action exists. *See id.* (citing *Kaucher v. Cnty. of Bucks*, No. CIV. A. 03-1212, 2005 WL 283628, at *11 (E.D. Pa. Feb. 7, 2005)).

Unfortunately, Ruiz-Rivera's response to the defendants' arguments here are difficult to comprehend. Most of the plaintiff's response consists of him repeating the defendants' contentions and referencing the holdings of the cases cited by the defendants. *See* Pl.'s Resp. to Defs.' Partial Mot. to Dismiss Pl.'s Am. Compl. ("Pl.'s Resp.") at ECF pp. 2–3, Doc. No. 6. It nonetheless appears that he is opposing the complete dismissal of Counts II and V because he believes he "has specifically enumerated the specific provision of the Constitution for which he seeks relief from the defendants." *Id.* at 3.

Due to the convoluted nature of Ruiz-Rivera's response, the court cannot tell whether he is actually trying to preserve any possible due process claim. Nevertheless, he may not assert such a claim here because his excessive force claims relating to his arrest arise under the Fourth Amendment.

In this regard, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citation omitted); *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. In most instances, that will be either the Fourth Amendment's prohibition against unreasonable searches of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically

abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard."). Here, Ruiz-Rivera appears to acknowledge that the specific constitutional provision applicable to his excessive force claims is the Fourth Amendment. *See* Pl.'s Resp. at 2 ("Plaintiff's claim in Count II states that his constitutionally protected rights under the Fourth Amendment to the United States Constitution were violated. He is using the correct vehicle to claim a violation of his rights under the Fourth Amendment."). As Ruiz-Rivera has made no argument that he somehow has a valid due process claim or identify the facts in the amended complaint that would make out such a claim outside the excessive force context, the court will grant the defendants' request to strike with prejudice any due process claims from the amended complaint, including those possibly included in Count II and Count V in their entirety.

With regard to any claim for a due process violation under the Pennsylvania Constitution, it appears that Ruiz-Rivera indicates that he is not asserting a due process violation but a violation of Article I, Section 8 of the Pennsylvania Constitution, which provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8.

Even if Ruiz-Rivera is asserting a claim under this section of the Pennsylvania Constitution, he has not stated a plausible claim for relief here as there is no private right of action for damages for violations of the Pennsylvania Constitution. *See Moss v. Pennsylvania*, 838 F. App'x 702, 708 (3d Cir. 2020) ("Moreover, to the extent that Moss alleged violations of the Pennsylvania Constitution, he failed to state a claim, as Pennsylvania does not recognize a private

right of action for damages in a lawsuit alleging a violation of the Pennsylvania Constitution." (citing *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Cmwlth. 2006))); *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (per curiam) ("To the extent that Miles intended to allege violations of the Pennsylvania Constitution, he failed to state a claim, as Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution." (citing *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n.4 (3d Cir. 2008))); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."). Ruiz-Rivera has not even attempted to explain how he can assert a claim for damages under the Pennsylvania Constitution. Accordingly, to the extent that Ruiz-Rivera is seeking damages for a violation of the Pennsylvania Constitution in Count II of the amended complaint, the court dismisses this claim with prejudice.

### 2. Conspiracy

In Count IV of the amended complaint, Ruiz-Rivera purports to assert a cause of action for a section 1983 conspiracy against Officer Bingham, Officer Lapp, and the John Doe Officers. *See* Am. Compl. at 15–17. The defendants argue that the court should dismiss this count because Ruiz-Rivera has failed to allege the necessary supporting facts to show or support a reasonable inference that the officer defendants had an unlawful agreement. Defs.' Br. at 10–11. In response to this argument, the plaintiff contends that he has properly alleged a section 1983 conspiracy insofar as he

> alleges in his First Amended Civil Action Complaint . . . that Defendant City of Lancaster and its Police Department has well known and documented customs, policies, and practices of not reasonably training its police officers in the use of force, including the use of tasers as is alleged in Plaintiff's complaint. Plaintiff

further alleges that hundreds of citizens in Lancaster are victims of police brutality by Defendant City of Lancaster. Plaintiff further alleges that Defendant City of Lancaster does not discipline its officers involved in excessive force complaints unless there is the verification of a fellow officer. Plaintiff alleges that Defendant Bingham falsified his police report to attempt to justify his use of force.

Pl.'s Resp. at ECF pp. 3–4.

Although Ruiz-Rivera has correctly identified certain allegations in the amended complaint, he does not adequately explain how those allegations show or provide a reasonable inference of a conspiracy between Officer Bingham, Officer Lapp, and the John Doe Officers. To plead a plausible section 1983 conspiracy claim, a plaintiff must allege that "two or more conspirators reach[ed] an agreement to deprive [the plaintiff] of a constitutional right under color of law." *Berrios v. City of Philadelphia*, 96 F. Supp. 3d 523, 534 (E.D. Pa. 2015) (citing *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993)). "Such a conspiracy requires a meeting of the minds." *Id.* (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)). Thus, to prevail in a conspiracy claim under section 1983, the plaintiff must allege and prove:

> (1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . an overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'"

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (alterations in original) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

Here, Ruiz-Rivera's allegations fall short of plausibly alleging an agreement between Officer Bingham, Officer Lapp, and the John Doe Officers. The court cannot discern how the custom, practice, or policy of the City of Lancaster or its police department of not properly training their officers in the use of force, combined with hundreds of other citizens in Lancaster being

12

victimized by police brutality, the City of Lancaster not disciplining its officers for using excessive force unless another officer corroborates the excessive force, and Officer Bingham falsifying his police report shows an agreement between Officer Bingham, Officer Lapp, and the John Doe officers to violate Ruiz-Rivera's constitutional rights. Ruiz-Rivera does not even attempt to tie these averments together to show a plausible allegation of a conspiratorial agreement. No agreement can be inferred from these allegations, so all the court is left with is bare assertions of conspiracy. Unfortunately for the plaintiff, "bare assertion[s] of conspiracy will not suffice." *Twombly*, 550 U.S. at 556. Accordingly, the court will grant the part of the motion to dismiss Ruiz-Rivera's section 1983 conspiracy claim in Count IV of the amended complaint.

   3.    <u>State Law Claims for Negligent Infliction of Emotional Distress, Assault, Battery, and Trespass</u>

Ruiz-Rivera appears to assert a number of state-law claims in the amended complaint. In Count VI of the amended complaint, Ruiz-Rivera asserts a cause of action for assault and battery against Officer Bingham, Officer Lapp, and the John Doe Officers. *See* Am. Compl. at 17–19. In Count VIII, Ruiz-Rivera asserts a cause of action for negligent infliction of emotional distress. *Id.* at 19–20. Then, in Count IX, he asserts "State Law Claims" apparently consisting of the torts of assault, battery, trespass, and negligent infliction of emotional distress. *Id.* at 20–21.

The defendants have moved to have the court dismiss all the aforementioned state law claims. They contend that the court should dismiss the assault and battery causes of action in count IX because they are duplicative of the causes of action contained in Count VI. Defs.' Br. at 11. They also argue that Ruiz-Rivera has failed to recite any facts that would support causes of action for trespass or negligent infliction of emotional distress. *Id.* They further assert that Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8541 ("PSTCA"), bars any state-law claims

against the City of Lancaster and against Officer Bingham and Officer Lapp in their official and individual capacities. *Id.* at 11–12.

With regard to the defendants' claim regarding the duplicative nature of Ruiz-Rivera's state-law assault and battery claims, it does not appear that he responds to this in his opposition brief. *See generally* Pl.'s Resp. at ECF pp. 5–13. Overall, and as discussed later in this opinion, there is an issue with how Ruiz-Rivera has organized his claims, as he devotes Count VI to a claim for assault and battery, but then repeats the cause of action in Count IX, which looks like a catch-all count for state-law claims.[4] He also includes a standalone count for the cause of action of negligent infliction of emotional distress (Count VII), but he also includes this cause of action in Count IX. In any event, it is unknown why these claims are pleaded in this manner, but Ruiz-Rivera cannot double recover simply because he mentions the same causes of action, based on the same facts, multiple times. As such, the court will grant the part of the motion seeking to strike the assault and battery claim included in Count IX as duplicative.[5]

Concerning the defendants' contention relating to the sufficiency of Ruiz-Rivera's factual allegations to support his causes of action for negligent infliction of emotional distress or trespass, there is a fundamental flaw in their argument. More specifically, the defendants have not conducted

---

[4] With respect to Count VI, although not mentioned by the defendants, the allegations in this count are unusual. In this regard, Ruiz-Rivera includes a cause of action (potentially under section 1983) for excessive force in Count VII of the amended complaint. As far as the court is aware, there is no cause of action for assault and battery under section 1983, yet in Count VI Ruiz-Rivera claims that he is "seeking relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. § 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws." Am. Compl. at 18–19. Thus, it appears that Ruiz-Rivera is attempting to assert an assault and battery claim under some other provision of the Constitution or federal law, in addition to a state-law claim. At bottom, the haphazard manner in which the amended complaint is drafted makes it difficult to identify precisely which causes of action or theories of relief Ruiz-Rivera is actually asserting in this case.

[5] The defendants did not move to have the court strike one of the two causes of action for negligent infliction of emotional distress as duplicative. *See* Defs.' Br. at 11. They also did not request that the court strike any section 1983 claim for assault and battery because it would seemingly be duplicative of an excessive force claim. As such, although the court has expressed concerns with the manner in which the amended complaint is drafted, the court has not reconciled the duplicative nature of these other causes of action.

any analysis here. They have not identified the elements of either cause of action or explained why Ruiz-Rivera's factual allegations do not support either cause of action. Instead, they have essentially included a single, conclusory sentence stating that Ruiz-Rivera has not alleged any facts to support these claims. Without any analysis, the court will not grant this part of the motion.[6]

---

[6] If the court was to address the defendants' argument, the court would deny this part of the motion with respect to the trespass claim. Under Pennsylvania law, "'[o]ne who intentionally enters land in the possession of another without a privilege to do so is liable'" for trespass. *Kopka v. Bell Tel. Co. of Pa.* 91 A.2d 232, 235 (Pa. 1952) (quoting Restatement of Torts §163); *see also Woodham v. Dubas*, 256 F. App'x 571, 576 (3d Cir. 2007) (per curiam) (holding jury's determination that officer entered property with permission precluded trespass verdict). If a law enforcement officer lawfully enters private property because the entry is privileged (*i.e.* the officer has a warrant, exigent circumstances justify warrantless entry, the officer has the owner's consent), the officer is not liable for trespass. *See Dorkoski v. Pensyl*, Civ. A. No. 4:05-705, 2007 WL 775602, at *9 (M.D. Pa. Mar. 9, 2007) ("To the extent that the court has found that exigent circumstances justified the defendants' entry into the plaintiff's property, the defendants' entry was not unprivileged and the plaintiffs' state law claim fails."). Here, Ruiz-Rivera alleges that Officer Bingham unlawfully followed him onto his property, without permission, and that he was assaulted on his property. *See* Am. Compl. at ¶¶ 17–25. As such, it appears that Ruiz-Rivera has plausibly pleaded a cause of action for trespass under Pennsylvania law.

As for the negligent infliction of emotional distress claim, Ruiz-Rivera's allegations are a bit more problematic. Under Pennsylvania law,

> the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative.

*Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197–98 (Pa. Super. 2008) (citing *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 26 (Pa. Super. 2000), *aff'd* 767 A.2d 548 (Pa. 2001)). A plaintiff proceeding in a cause of action for negligent infliction of emotional distress "must also allege 'some physical harm' resulting from her emotional distress. The 'physical harm' cannot be temporary or transitory in nature but must be repeated or ongoing." *Drumheller v. Johnson & Johnson*, Civ. A. No. 20-6535, 2021 WL 1853407, at *16 (E.D. Pa. May 10, 2021). Sufficient allegations of physical harm resulting from emotional distress include allegations that a plaintiff's "emotional shock manifested in nausea, headaches, insomnia, depression, nightmares, flashbacks, repeated hysterical attacks, stress, and anxiety." *Id.* (citation and internal quotation marks omitted).

Here, Ruiz-Rivera acknowledges that he is proceeding under the second theory, *i.e.* that he was subjected to a physical impact. *See* Pl.'s Resp. at ECF p. 10 ("Mr. Ruiz clearly suffered a physical impact when he was tased and assaulted by multiple officers in his front yard. Mr. Ruiz suffered emotional distress from the fear of his neighbors and children witnessing the event and from the attack itself."). Under this theory, a plaintiff may recover "emotional distress damages that are accompanied by direct physical injury caused by a defendant's negligence. These so-called 'parasitic' damages are allowed even where the physical injury is relatively minor." *Shumosky v. Lutheran Welfare Servs. of Ne. PA, Inc.*, 784 A.2d 196, 200 (Pa. Super. 2001) (citation omitted).

The issues the court identifies with the amended complaint are that Ruiz-Rivera really does not plead that any officer acted negligently here. Instead, his factual allegations describe what would appear to be intentional (or at worst, reckless conduct) and the amended complaint includes references to seemingly most legally cognizable mental states other than negligence. *See, e.g.*, Am. Compl. at ¶ 87 ("All Defendants' conduct was done knowingly, intentionally, willfully, maliciously, wantonly, grossly intentional [sic], recklessly and with deliberate indifference . . . ."); *id.* at ¶ 89 ("Defendants' conduct, in concert with each other, was done knowingly, intentionally, willfully, maliciously, wantonly, grossly intentionally, and recklessly . . . ."). In addition, while Ruiz-Rivera mentions that the defendants' actions caused him to suffer emotional distress, he has not identified the physical harm he incurred from

With regard to the defendants' claims of PSTCA immunity, the court notes that this Act

> grants the City governmental immunity from liability for any damages resulting
> from an injury to a person or property caused by any act of the City, its employee,
> or any other person, except as specifically provided for under 42 Pa.C.S.A. § 8542.
> This immunity extends to an employee of the City who is liable for civil damages
> caused by acts which are within the scope of his office or duties. An employee may
> be indemnified for the payment of a judgment arising from a lawsuit when the
> employee was acting, or reasonably believed that he was acting, within the scope
> of his duties. 42 Pa.C.S.A. § 8548(a). An employee's immunity does not extend to
> acts that are judicially determined to be crimes, actual fraud, actual malice, or
> willful misconduct. 42 Pa.C.S.A. § 8550.

*Renk v. City of Pittsburgh*, 641 A.2d 289, 292 (Pa. 1994). Also, aside from the exceptions for

criminal activity, fraud, "actual malice, or willful misconduct[,]" there are eight enumerated

exceptions to PSTCA immunity: (1) vehicle liability; (2) care, custody, or control of personal

property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility services

facilities; (6) streets; (7) sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse.

42 Pa. C.S. § 8542(b)(1)-(9).

Here, the City of Lancaster would be immune from any claims based on willful or

malicious conduct. The PSTCA waives this immunity only with respect to certain negligent acts,

which do not include "acts or conduct which constitute[] a crime, actual fraud, actual malice or

willful misconduct." *Id.* § 8542(a)(2). Ruiz-Rivera's causes of action for assault, battery, and

trespass are intentional torts and based on allegations of willful conduct. As such, the City of

Lancaster is immune from suit for these claims under the PSTCA. *See, e.g.*, *Madar v. City of*

*Philadelphia*, Civ. A. No. 19-6033, 2021 WL 2156362, at *13 (E.D. Pa. May 27, 2021)

(determining that PSTCA barred plaintiff's trespass claim and pointing out that "[t]respass is an

intentional tort to 'the extent deliberate conduct is averred,' to the extent that the claim avers

---

the emotional distress and his being assaulted is not the type of physical harm contemplated in this type of cause of
action. As such, he appears to have not pleaded a plausible claim for negligent infliction of emotional distress.

mistaken conduct, it does not fall within an exception to governmental immunity for negligence." (quoting *Win & Son, Inc. v. City of Philadelphia*, 162 F. Supp. 3d 449, 466–67 (E.D. Pa. 2016))); *Lakits v. York*, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003) (dismissing state-law assault and battery claims against borough because borough was immune from claims for intentional torts under PSTCA). With regard to Ruiz-Rivera's negligent infliction of emotional distress claim, the PSTCA would also bar this claim. Although it is a negligence-related claim, the factual allegations supporting it do not fall within any of the nine exceptions laid out in 42 Pa. C.S. § 8542(b). *See Young v. Scott Twp.*, 469 F. Supp. 3d 298, 310 (M.D. Pa. 2020) ("Plaintiffs bring three tort claims under Pennsylvania law: assault, battery, and negligent infliction of emotional distress. The Scott Township Defendants assert that the [PSTCA] grants them immunity. The PSTCA certainly applies to Plaintiffs' claim of negligent infliction of emotional distress.").

From an individual liability standpoint, the allegations that Officer Bingham trespassed on the plaintiff's property and tased him sufficiently allege willful misconduct by Officer Bingham. In addition, the allegations that Officer Bingham, Officer Lapp and other officers tackled the plaintiff and then punched him are sufficient to allege willful misconduct. Moreover, these allegations set forth plausible claims under Pennsylvania law for assault, battery, and trespass, which are intentional torts that would fall outside of the PSTCA. *See Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) ("Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such a desire can be implied.' Otherwise stated, the term 'willful misconduct' is synonymous with the term 'intentional tort.'" (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289 (1994))); *see also Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 744 (E.D. Pa. 2014) ("Taking the facts Boyden has pled as true, he has stated a claim for

17

excessive force, and so he has also stated a claim for assault and battery. We will therefore deny the motion to dismiss as to this state law claim."). Accordingly, the court will not dismiss the plaintiff's state law claims against Officer Bingham, Officer Lapp, or the John Doe officers at this time because the PSTCA does not provide them with immunity for these claims.

The plaintiff's negligent infliction of emotional distress claim, however, requires a different result. As explained above, this cause of action relates to a negligent act that does not fall within the enumerated exceptions to immunity. Therefore, the court must dismiss the negligent infliction of emotional distress claim as asserted against Officer Bingham, Officer Lapp, and the John Doe Officers in counts VIII and IX of the amended complaint.

4.   Ruiz-Rivera's Claims for Injunctive or Declaratory Relief

The defendants contend that the court should strike Ruiz-Rivera's claims for injunctive and declaratory relief in paragraph 3 of the amended complaint because he has failed to allege the specific type of declaratory or injunctive relief he is seeking or why it is necessary. Defs.' Br. at 12. As such, the defendants assert that he has failed to show that he has Article III standing to assert these forms of relief. *Id.* (citations omitted).

While the defendants accurately note that Ruiz-Rivera has not identified the specific type of declaratory relief or injunctive relief he is seeking in this case, the court does not find that he lacks standing at this early stage to assert such relief. Interestingly, the defendants cite to *McBride v. Cahoone*, 820 F. Supp. 2d 623 (E.D. Pa. 2011) in support of their standing argument when *McBride* actually supports a determination that Ruiz-Rivera has standing here.

In *McBride*, the defendants claimed that the plaintiff "lack[ed] standing to bring claims for injunctive and declaratory relief because [he] allege[d] no facts demonstrating that his injury is likely to be repeated." 820 F. Supp. 2d at 633. The Honorable Legrome D. Davis, now retired,

rejected this argument. *See id.* ("Although this is a close question, we cannot conclude at this nascent stage of the proceedings that [the plaintiff] lacks standing to assert his claims for prospective relief."). In addressing the defendants' standing argument, Judge Davis explained that

> [t]he three "irreducible" constitutional elements of standing are: (1) an injury in fact that is actual or imminent, not "conjectural" or "hypothetical"; (2) a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant; and (3) a showing that it is likely, as opposed to merely speculative, that a favorable decision will redress the injury.

*Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Judge Davis then noted that the defendants focused on the "injury in fact" prong of the standing test. *Id.* He concluded that the plaintiff had sufficiently alleged an imminent injury because he had alleged that the defendants acted pursuant to an official policy in violating his rights. He explained that

> [w]hile we are aware that in analyzing standing, courts generally decline to presume that a [defendant] will violate the law in the future, we believe the analysis does, and should, differ when an official policy mandates the allegedly unconstitutional conduct. . . . [T]he presence of an official policy greatly increases the likelihood that any individual, including [the plaintiff] will imminently suffer the very same deprivation of liberty [the plaintiff] claims to have suffered in the past.

*Id.* at 635 (internal citation omitted).

Here, other than indicating that it is unclear the type of injunctive or declaratory relief Ruiz-Rivera is seeking, the defendants do not identify which aspect of the elements for constitutional standing Ruiz-Rivera is lacking. Nonetheless, at this early stage in the proceedings, and as Ruiz-Rivera has alleged that the defendant officers were acting pursuant to an official policy when they violated his rights, the court cannot say at this time that he lacks constitutional standing to seek declaratory or injunctive relief. As such, the court will deny the defendants' request that the court strike the claims for declaratory and injunctive relief in paragraph 3 of the amended complaint.

5.   <u>Ruiz-Rivera's References to the First Amendment, Fifth Amendment, and Equal Protection</u>

The defendants point out that while he does not expressly include a claim for a First or Fifth Amendment violation in the title of any count of the amended complaint, Ruiz-Rivera does randomly reference these amendments in multiple *ad damnum* clauses. *See* Defs.' Br. at 12 (citing amended complaint). In addition, they note that Ruiz-Rivera also generally asserts that he was not afforded "equal protection under the law." *Id.* at 12–13 (citing Am. Compl. at ¶¶ 42(a), 70). They contend that the court should strike these references as he has not pleaded sufficient facts to assert an equal protection claim or a violation of the First or Fifth Amendments. *Id.* at 13.

With regard to the First Amendment, it appears that Ruiz-Rivera is attempting (albeit not via an actual count in the amended complaint)[7] to assert a First Amendment retaliation claim. A plaintiff asserting that a defendant retaliated against them in violation of the First Amendment must allege that (1) he engaged in activity protected under the First Amendment, (2) the defendant retaliated against him, (3) the retaliatory action was sufficient to deter a person of ordinary firmness

---

[7] The fact that Ruiz-Rivera is specifically setting out some causes of action in specific counts of the amended complaint and yet, is also claiming that he is pursuing causes of action under various constitutional amendments and statutes thrown into an *ad damnum* clause is very problematic. As an example, when Ruiz-Rivera asserts a cause of action for negligent infliction of emotional distress in Count VIII of the amended complaint, such a claim is undeniably only a state-law tort claim. Yet, in the *ad damnum* clause for this count, Ruiz-Rivera alleges that he

> seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $350,000.00, attorney's fees, costs, expenses and interest.

Am. Compl. at 20. It is unclear how the plaintiff could possibly obtain relief under Title VI of the Civil Rights Act of 1964 for negligent infliction of emotional distress.

Yet, there is no Rule of Civil Procedure requiring plaintiffs to assert their proposed causes of action in separate counts, the court is giving Ruiz-Rivera significant latitude despite the haphazard manner in which this amended complaint is pleaded. Certainly, the manner in which this amended complaint has been pleaded makes it difficult for all involved to discern precisely what Ruiz-Rivera's legal theories are in this action.

from exercising his rights, and (4) a causal connection exists between the protected activity and the alleged retaliatory action. *See Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

Here, Ruiz-Rivera alleges that he responded to Officer Bingham's question about who was with him by stating "your mother." Am. Compl. at ¶ 21. At this point, Officer Bingham aggressively followed him and, soon thereafter, tased him. *Id.* at ¶¶ 21–22. Officer Bingham and other officers then tackled Ruiz-Rivera and then punched him while he was on the ground. *Id.* at ¶ 23. These allegations would seemingly reflect that (1) Ruiz-Rivera engaged in First Amendment activity when he spoke to Officer Bingham, (2) Officer Bingham retaliated against him by tasing him and then punching him, (3) tasing someone and striking them would be sufficient to deter a person of ordinary fitness from exercising their rights, and (4) there is a sufficient causal connection between Ruiz-Rivera's comment and the alleged retaliatory actions by Officer Bingham. As such, the court reluctantly finds that the allegations, at this early stage, are sufficient to assert a First Amendment retaliation claim.

With regard to the Fifth Amendment, while it surely is not evident from the amended complaint, Ruiz-Rivera purports to be asserting a claim that the defendants violated his right to self-incrimination under the Fifth Amendment. Pl.'s Resp. at ECF pp. 17, 18. If this is in fact his claim, Ruiz-Rivera has failed to state a plausible claim under the Fifth Amendment.[8]

The Fifth Amendment provides in pertinent part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. The fact that Officer

---

[8] To the extent that Ruiz-Rivera was possibly trying to assert a due process claim under the Fifth Amendment, he could not do so because "the Fifth Amendment applies to actions of the federal government." *B&G Constr. Co., Inc. v. Director, Office of Workers' Compensation Prog.*, 662 F.3d 233, 246 n.14 (3d Cir. 2011) (explaining difference between due process claims under Fifth and Fourteenth Amendment). There are no allegations that any of the defendants are federal actors.

Bingham asked Ruiz-Rivera questions about who he was with is insufficient to raise a Fifth Amendment claim.

In this regard, to the extent that this is somehow an implied part of Ruiz-Rivera's claim, there is no basis to find that Officer Bingham had to read Ruiz-Rivera *Miranda* warnings prior to asking him questions. Law enforcement officers must provide a suspect with specific warnings of the suspect's Fifth Amendment rights prior to a "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A "custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* An "interrogation" under *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Here, Ruiz-Rivera's Fifth Amendment rights were not violated by Officer Bingham asking questions because there are no plausible allegations in the amended complaint that he was in custody at the time the questions were asked. Instead, as Ruiz-Rivera repeatedly admits, he was continuing to walk around his property while Officer Bingham questioned him; thus, he was not deprived of his freedom of action in any significant way. Officer Bingham was also "following" him and there are no allegations indicating that he was impeding Ruiz-Rivera's movement until the time that Ruiz-Rivera was tased. At that point, Ruiz-Rivera does not identify any questions that any officer asked him.

Even if Ruiz-Rivera was somehow in custody at the time Officer Bingham questioned him, he still would not have a section 1983 claim for a Fifth Amendment violation as he does not allege that any statements he made were used against him at a trial. *See King v. Cavallo*, Civ. A. No. 19-

22

1005, 2019 WL 2246803, at *5 n.5 (E.D. Pa. May 22, 2019) ("King also alleges that Cavallo failed to provide him *Miranda* warnings. That allegation does not state a constitutional claim because King does not also allege that he made statements during a custodial interrogation that were used against him at trial."); *see also Renda v. King*, 347 F.3d 550, 557–58 (3d Cir. 2003) ("[I]t is the use of coerced statements during a criminal trial, and not in obtaining an indictment, that violates the Constitution.").[9] "The proper—and exclusive—remedy for a violation of these measures is the exclusion of the unwarranted statements at trial, not a claim for civil damages." *Morency v. City of Allentown*, No. 5:19-cv-5304, 2020 WL 1935640, at *12 (E.D. Pa. Apr. 22, 2020) (citing *United States v. Patane*, 542 U.S. 630, 642 (2004)). Therefore, the court will strike without prejudice any claim for a violation of the Fifth Amendment in the amended complaint. *See Castillo v. Guzley*, No. 19-cv-4002, 2019 WL 5068571, at *6 (E.D. Pa. Oct. 8, 2019) ("Here, Castillo has done nothing more than allege that he was never read his *Miranda* warnings with respect to his arrest on or about June 22, 2019. There are no allegations that he was questioned in a custodial interrogation, that he provided answers to law enforcement during that time, that any subsequent criminal charges were brought against him, or that his statements to law enforcement were used against him in a subsequent trial. Accordingly, Castillo's Fifth Amendment claim will be dismissed without prejudice.").

---

[9] The Third Circuit has  also discussed the failure to provide *Miranda* warnings in relation to a section 1983 claim as follows:

> [V]iolations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself. The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the "right to counsel" during custodial interrogation recognized in *Miranda* . . . is merely a procedural safeguard, and not a substantive right.

*Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994) (internal citations omitted).

Regarding any claims that Ruiz-Rivera's equal protection rights were violated, even though he uses the phrase "equal protection" in the amended complaint, he does not plausibly allege an equal protection violation. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation and citation omitted). A plaintiff must identify a similarly situated individual whom the state treated differently to establish an equal protection claim and the failure to do so warrants dismissal of the claim. *See, e.g.*, *Karns v. Shanahan*, 879 F.3d 504, 521 (3d Cir. 2018) (holding equal protection claim lacked merit, in part, because plaintiffs "point[ed] to no evidence that [the officers] treated similarly situated individuals differently. They d[id] not even identify other individuals who might be similarly situated" (footnote omitted)); *Mann v. Brenner*, 375 F. App'x 232, 238 (3d Cir. 2010) (affirming dismissal of equal protection claim because plaintiff failed to plausibly plead that he was treated differently than other similarly situated individuals—i.e., Borough Managers—who[m the former mayor of Kutztown] treated differently than he treated [plaintiff]." (citation omitted)). "[G]eneral accusations and the invocation of the Equal Protection Clause are not enough." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

Here, Ruiz-Rivera states in his brief in response to the motion to dismiss that he "brings a valid claim under the Equal Protection Clause of the Fourteenth Amendment when he, as a Hispanic male, was intentionally treated differently from similarly situated citizens when he was tased, assaulted, and handcuff[ed] without cause after a verbal exchange with a Caucasian police officer." Pl.'s Resp. at ECF p. 18. Despite this claim, while the amended complaint mentions that Ruiz-Rivera is a Hispanic male, it contains no factual allegations that he was treated differently

than anyone else. Moreover, it actually appears to contain allegations that he has been treated the same as other people. For example, he avers that "all of said officers have committed such brutal acts in the past against innocent victims." Am. Comp. at ¶ 30. He also claims that "several complaints have been made against the Defendants in the past and such complaints have been investigated by Internal Affairs." *Id.* at ¶ 31. He further asserts that "hundreds of law-abiding citizens are the victims of police brutality by Defendant City of Lancaster employees (police officers) that result in their being charged and prosecuted for crimes they are innocent of." *Id.* at ¶ 36. Finally, he claims that "[p]olice brutality is rampant in Lancaster." *Id.* at ¶ 37. These allegations show that he is apparently (and unfortunately) being treated the same as many other citizens in Lancaster. Accordingly, Ruiz-Rivera has failed to properly plead an equal protection claim against the defendants.

### C.     Leave to Amend

A district court should generally provide leave to amend unless amending would be inequitable or futile.  *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule).  Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).  In this case, the court does not find that amending the complaint with regard to the claims that the court is dismissing without prejudice would be futile, so the court will grant the plaintiff leave to file a second amended complaint.

### III.     CONCLUSION

As the court explained above, the court will dismiss with prejudice the plaintiff's due process claim under the Fourteenth Amendment as the Fourth Amendment is the specific

constitutional provision forming the basis of his excessive force claim. In addition, to the extent that the plaintiff is attempting to recover damages for any violation of the Pennsylvania Constitution, whether via a due process claim or a claim under Article I, Section 8 of the Pennsylvania Constitution, he has not stated a plausible cause of action and the court will also dismiss this claim with prejudice. With regard to his conspiracy claims, the plaintiff has not included sufficient allegations that would show a reasonable inference of a conspiracy between the defendants here, so the court will dismiss this claim without prejudice. The court will also dismiss with prejudice the plaintiff's state-law tort claims against the city and his claim for negligent infliction of emotional distress against the defendant officers. Finally, the court will dismiss without prejudice the plaintiff's claims under the Fifth Amendment and the Equal Protection Clause due to his failure to assert a plausible constitutional violation.

The court will deny the motion to partially dismiss to the extent the defendants sought to have the court (1) dismiss the plaintiff's state-law tort claims for trespass, assault, and battery against the individual officers, (2) strike the plaintiff's references to injunctive or declaratory relief, and (3) strike the plaintiff's reference to the First Amendment in various *ad damnum* clauses. Additionally, although the court is granting the plaintiff leave to file a second amended complaint, the court urges the plaintiff, if he files this second amended complaint, to craft the document in a manner which clearly specifies the factual allegations in the case and the legal theories upon which he is seeking relief.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.